**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| In re:<br><br>LYNDA V. ALLEN<br><br>      Debtor | Chapter 13<br>Case No. 17-10436-JEB |
| LYNDA V. ALLEN<br><br>      Plaintiff<br><br>v.<br><br>THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.<br>and<br>OCWEN LOAN SERVICING, LLC<br><br>      Defendants | Adversary Proceeding<br>No. 17-01158-JEB |

**MEMORANDUM OF DECISION**

This matter came before the Court on the Motion for Summary Judgment ("Motion") filed by the defendants, The Bank of New York Mellon Trust Company as trustee ("BNY") and Ocwen Loan Servicing, LLC ("Ocwen") (collectively, "Defendants"). Pursuant to the Motion, the Defendants seek summary judgment on all counts of the complaint. The plaintiff and debtor, Lynda V. Allen ("Ms. Allen" or "Debtor"), asserts that the Motion should be denied since there are genuine issues of material facts. For the reasons set forth below, the Court finds that the Defendants are entitled to judgment as a matter of law on all counts.

**1.    Standard**

Summary judgment must be granted when the moving party demonstrates that there is no genuinely disputed material fact and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) made applicable by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). To support the motion, the moving party can cite specific parts of the record or identify the nonmoving party's evidentiary shortcomings. Fed. R. Civ. P. 56(c). For example, the moving party can show that the nonmoving party lacks sufficient admissible evidence to meet its burden of proof at trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

Once the moving party makes such a showing, the burden shifts to the party opposing summary judgment. *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir. 1989). The existence of some disputed facts will not defeat a motion for summary judgment. *Anderson*, 477 U.S. at 249. Instead, the party opposing the motion must establish that there is a genuine issue of material fact with respect to the claims. *Id.* at 247-48. A material fact is one that will affect the outcome of trial under the substantive law. *Id.* at 248. A dispute is genuine if there is sufficient evidence to support a finding for the nonmoving party at trial. *Id*. If the nonmoving party bears the ultimate burden of proof at trial, the nonmoving party must show "definite, competent evidence" regarding the claims. *Mesnick v. Gen. Elec. Co*., 950 F.2d 816, 822 (1st Cir. 1991). "[C]onclusory allegations, improbable inferences, or unsupported speculation" are not sufficient to defeat a summary judgment motion. *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

In determining whether summary judgment must be granted, the court does not weigh evidence. *Anderson*, 477 U.S. at 249. The court must view the evidence in the light most

favorable to the nonmoving party, drawing all inferences in favor of such party. *Daury v. Smith*, 842 F.2d 9, 11 (1st Cir. 1988). If a reasonable factfinder would not find for the nonmoving party, then the motion for summary judgment may be granted. *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010).

### 2. Background

The background below reflects the facts relevant to this decision that are undisputed at least for purposes of the Motion, except as otherwise noted. Certain additional information is given to provide helpful context for a long-running disagreement.

In May 2001, Ms. Allen executed a promissory note, mortgage, and other related documents as to her principal residence at 2 Stevenson Lane, Harwich, Massachusetts. The promissory note ("Note") required Ms. Allen to repay $421,000 in principal plus interest at the fixed annual rate of 8.5 percent over a 30-year period, ending in June 2031. Monthly principal and interest payments, beginning in July 2001, were about $3,200. The Note was secured by a mortgage ("Mortgage") on the property. Rather than escrowing amounts for property taxes and homeowner's insurance to be paid through the loan's servicer, Ms. Allen agreed to pay those expenses directly herself. She executed a separate agreement regarding taxes and insurance, which waived the escrow provision in the Mortgage as long as certain conditions were met.

Ms. Allen paid the first two principal and interest payments in the months that they were due. She paid the third payment more than a month late. Records indicate further late and missed monthly payments. By the year's end, the servicer advanced funds to a newly created escrow account to begin paying property taxes and force-placed hazard insurance. Ms. Allen disputes the propriety and necessity of establishing the escrow account and later similar actions by servicers.

3

By April 2002, Ms. Allen was at least five months behind on the monthly mortgage loan payments. She agreed to resolve the arrearage over a 12-month period but breached that agreement within a few months. Around that time, the mortgage loan's servicing was transferred from the original servicer, Homecomings Financial Network, to Litton Loan Servicing.

In December 2002, facing foreclosure, Ms. Allen filed a petition under Chapter 13 of the Bankruptcy Code ("First Bankruptcy"). In May 2003, the court confirmed Ms. Allen's Chapter 13 plan, which included addressing a roughly $33,000 mortgage loan arrearage over a 60-month period. After she fell behind in her postpetition payments, Ms. Allen and Litton entered into a stipulation to cure her default on the postpetition payments.

In July 2008, having completed her plan, Ms. Allen received a discharge under Section 1328(a). The discharge did not, however, eliminate her personal liability for the mortgage loan. *See* 11 U.S.C. § 1328(a)(1). It also did not affect the mortgagee's lien on the property.

During the First Bankruptcy, Ms. Allen engaged Marie T. McDonnell to provide a mortgage analysis. In addition, Ms. Allen's records indicate that she received at least one "Monthly Statement" from Litton during the First Bankruptcy. After the First Bankruptcy concluded, Ms. Allen began receiving "Billing Statement[s]" listing current balances, amounts owed, fees assessed, and payments processed. According to the record, she also received an extensive detailed history from Litton in November 2008, that reflected payments and charges to the account from June 2002 onward.

Ms. Allen continued to fall behind on her payments. She alleges that three payments made during 2008 and 2009 and one payment made in June 2010 were not properly credited. But she does not dispute that no payments were made during January 2010 to May 2010. Although

4

the parties disagree on when the last payment was made, it is undisputed that Ms. Allen has not made a payment since June 15, 2010.

In May 2010, Ms. Allen received a letter from Harmon Law Firm on behalf of Litton, giving notice that Litton intended to pursue a foreclosure because of Ms. Allen's breach of her obligations under the Mortgage. In the letter, counsel on behalf of Litton gave notice that the Note was accelerated and that the entire balance was due and payable. According to the letter, the loan balance at the time was in excess of $427,000, including approximately $385,000 in principal and $42,000 in interest and other charges.

In October 2010, Ms. Allen retained Jamie Ranney, P.C., as counsel to assist her in addressing alleged issues with the servicing of the Mortgage and to seek a loan modification. This representation continued through at least 2016. From 2010 through 2016, Attorney Ranney sent several communications to Litton and Ocwen, who began servicing the loan in 2011. Only certain communications were included in the record.

Attorney Ranney asserted that certain communications were a "Notice of Error" or a "Request for Information," which can be types of "Qualified Written Requests" specified in federal regulations relating to the Real Estate Settlement Procedures Act ("RESPA"). 12 U.S.C. § 2605(e), 12 C.F.R. § 1024.35. Ms. Allen also asserts that communications sent by Ms. McDonnell, discussed below, were Notices of Error, Requests for Information or Qualified Written Requests. The parties dispute whether the communications constitute Qualified Written Requests under RESPA. For convenience, the Court has identified the various communications by the label used by the sender. However, the Court's use of the label is not a determination that a particular communication is a Qualified Written Request.

5

By letter dated in January 2011, responding to a request, Litton provided an 11-page transaction history to Ms. Allen. The history shows certain fee assessments from June 2002 through September 2010, payments received and applied from May 2005 through December 2009, and funds moving through suspense and escrow accounts.

Over three and a half years later, in August 2014, Attorney Ranney sent a letter to Ocwen, which he asserted was a "Notice of Error." In the August 2014 letter, Attorney Ranney raised a number of issues, but primarily focused on a loan modification. He asserted that Ocwen had violated federal law and regulations in connection with its treatment of a loan modification application. He also proposed loan modification terms for Ocwen to consider.

Attorney Ranney wrote to Ocwen again about two years later in September 2016, copying BNY. He denoted that letter as a "Second Notice of Error," a "Second Request for Information," and a demand letter under Chapter 93A of the Massachusetts General Laws. Attorney Ranney again covered multiple topics. In the September 2016 letter, Attorney Ranney also alleged that Ocwen had erred two years earlier in responding to his August 2014 letter.

In November 2016, Ms. Allen hired Ms. McDonnell again to investigate her mortgage file and pursue certain information under RESPA. By letters dated December 1, 2016, Ms. McDonnell sent three communications to Ocwen, labeling each as a "Request for Information." Ocwen responded to the communications through counsel. As discussed in the analysis below, the parties generally dispute the adequacy of Ocwen's response.

On February 8, 2017, again facing imminent foreclosure, Ms. Allen filed the Chapter 13 bankruptcy petition that is now pending. The case had some initial procedural challenges, leading to its being dismissed and reinstated twice. Although BNY filed a $657,000 secured claim, alleging over $317,000 in prepetition mortgage loan arrears, the claim was disallowed as

6

untimely. BNY objected to a proposed Chapter 13 plan by Ms. Allen, but the objection was continued generally, pending further order in this adversary proceeding.

In September 2017, Ms. Allen again hired Ms. McDonnell, to provide audit services, including an update of her 2005 audit. On October 4, 2017, Ms. McDonnell sent a nearly 30-page letter marked as a "Notice of Error," plus exhibits, to Ocwen. Among other things, Ms. McDonnell reported that her review showed about $30,000 in missing funds and erroneous charges before Ms. Allen stopped paying in 2010. Ocwen responded directly and through counsel. The adequacy of those responses is also generally disputed.

### 3. Adversary Proceeding

On December 26, 2017, Ms. Allen commenced this adversary proceeding against BNY and Ocwen. Her third amended complaint ("Complaint") is the operative pleading. It asserts five counts. Four counts raise state law claims: accounting (Count 1), breach of contract (Count 3), Chapter 93A violations (Count 4), and obsolete mortgage (Count 5). The remaining count alleges RESPA violations (Count 2). Certain factual allegations appear to question who holds the Note, but there is no associated claim. Ms. Allen seeks a determination that Defendants have no lien on the property or that any lien is void. Ms. Allen also seeks actual damages, multiple damages, attorneys' fees, and costs.

The Defendants deny that Ms. Allen is entitled to any relief and have moved for summary judgment on all counts. As discussed in the analysis below, their arguments primarily focus on demonstrating that Ms. Allen lacks admissible evidence to meet her burdens at trial and that certain claims are barred by the statutes of limitations.

After multiple extensions of the deadline to file an opposition, Ms. Allen did not file a responsive brief in opposition to the Motion. She did respond to the Statement of Undisputed

7

Facts filed by the Defendants and filed her own "Concise Statement of Facts," to which the Defendants responded. She also relied on the "Affidavit and Testimony of Marie McDonnell, CFE, MAFF [and] Offer of Proof" ("McDonnell Affidavit"). Ms. Allen's opposition discussed below is largely drawn from her counsel's arguments at a hearing on the matter and the summary judgment record.

### 4. Motions to Strike

Both parties filed motions to strike affidavits filed in connection with the Motion. The Defendants moved to strike the McDonnell Affidavit. Ms. Allen moved to strike the affidavit and supplemental affidavit of Blaine Shadle ("Shadle Affidavits").

By separate order, the Court will grant, in part, the Defendants' motion to strike the McDonnell Affidavit for purposes of determining this Motion. The Court has not considered the "opinions" offered by Ms. McDonnell regarding (i) the merits of the Motion, (ii) whether BNY owns the Note and Mortgage, (iii) the effect of Ms. Allen's discharge in 2008, and (iv) the sufficiency of the responses by Ocwen to the various alleged Qualified Written Requests sent on behalf of Ms. Allen. The resolution of the Motion is the ultimate question for the Court, not a matter for expert testimony. The other "opinions" are legal arguments or opinions. While Ms. McDonnell asserts that she is an expert in investigating mortgage inconsistencies, she is not an attorney and is not qualified or permitted to make legal arguments in this matter on Ms. Allen's behalf. In determining this Motion, the Court has considered the McDonnell Affidavit for purposes of identifying disputed facts, to the extent the facts are within the personal knowledge of Ms. McDonnell or are otherwise admissible.

Since the Court has determined that the Defendants are entitled to summary judgment on all counts, the Court makes no determination on the admissibility at trial of expert testimony by

8

Ms. McDonnell. If the matter were to proceed to trial, the Defendants could renew their request for such determination. For similar reasons, the Court will deny without prejudice Ms. Allen's request for an evidentiary hearing on the admissibility at trial of Ms. McDonnell's asserted expert opinions.

By separate order, the Court will also deny Ms. Allen's motions to strike the Shadle Affidavits. As more fully set forth in the opposition of the Defendants to the first motion to strike, the Shadle Affidavits satisfy the requirements for personal knowledge and the requirements for admissibility of business records. *See* Fed. R. Evid. 803(6); *U.S. Bank Tr., N.A. v. Jones*, 925 F.3d 534, 538-540 (1st Cir. 2019).

**5.   Analysis**

As more fully set forth below, the Defendants are entitled to judgment as a matter of law on all counts in the Complaint.

### a.   Count 1 – Accounting

Under Count 1 of the Complaint, Ms. Allen seeks the equitable remedy of an accounting to determine the balance owed on her mortgage loan. Alleging that there have been improper charges and misapplied funds, Ms. Allen asserts that an accounting is required to determine whether charges were appropriate and payments were misapplied.

The Defendants are entitled to judgment in their favor on Count 1 since Ms. Allen fails to show that the circumstances qualify for the equitable remedy of an accounting. The remedy of an accounting typically requires a finding of a fiduciary relationship. *Chedd-Angier Prod. Co. v. Omni Publ'ns Int'l, Ltd.*, 756 F.2d 930, 937 (1st Cir. 1985). The use of the remedy may also be appropriate in limited circumstances "where the accounts are so complicated that an action at law would not be an adequate remedy." *Porter v. Reid*, 79 F. Supp. 898, 907 (D. Mass. 1948).

9

In this case, Ms. Allen failed to provide evidence that would support a determination that a fiduciary relationship existed. Ms. Allen does not assert a fiduciary relationship in the Complaint, or in the documents filed in response to the Motion. Absent other circumstances, the relationship of a lender and a borrower is a business relationship, not a fiduciary relationship. *FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 102 (1st Cir. 2009). At the hearing on the Motion, counsel to Ms. Allen argued that a fiduciary relationship arose when the servicers established a suspense account. But he offered no support for the legal theory. The Mortgage itself provides a basis for creating a suspense account, expressly stating that the lender may accept insufficient payments but is not obligated to apply them or pay interest on unapplied funds. No basis for finding a fiduciary relationship has been shown.

Ms. Allen also failed to provide evidence from which it could be inferred that the loan history is "so complicated" that the remedies at law would not be adequate. In the McDonnell Affidavit, Ms. McDonnell asserts that the reports provided were insufficient to identify the applications of the payments and charges. But despite such assertions, Ms. McDonnell identifies allegedly misapplied payments and errors through 2010, when Ms. Allen admits that she stopped making payments. Ms. Allen offers nothing to show that her legal remedies, such as claims for breach of contract and RESPA violations, are inadequate to address any claims for allegedly misapplied payments or improper charges. The fact she may not have pursued her legal remedies timely does not allow Ms. Allen to end run the statutes of limitations by seeking the remedy of an accounting.

      **b.**    **Count 2 – RESPA Violations**

Under Count 2, Ms. Allen claims that the Defendants violated their obligations under RESPA by failing to respond adequately to her Requests for Information sent in December 2016

10

and the Notice of Error sent in October 2017. She alleges that the responses were not timely or complete, and that the Defendants failed to correct the errors identified in the Notice of Error sent in October 2017. In the Complaint, Ms. Allen alleges that her damages are the expenses she incurred to hire experts and attorneys. In response to the Motion, Ms. Allen also alleged that she had damages for emotional distress.

When a Qualified Written Request is received, mortgage loan servicers have certain obligations to act in response. *See* 12 U.S.C. § 2605(e); 12 C.F.R. § 1024.35. The Defendants dispute whether the communications constitute Qualified Written Requests under RESPA. As previously noted, the Court has identified the various communications by the labels used by the senders. But neither the use of the labels nor the discussion of RESPA is intended to be a determination that a particular communication is a Qualified Written Request. For the reasons set forth below, even if the communications were Qualified Written Requests, Ms. Allen has failed to adduce evidence that she could prevail on her claims under RESPA.

BNY is entitled to judgment as a matter of law since it is not the mortgage servicer. The provisions of RESPA at issue in this case apply to entities that "service" a loan, which is defined as receiving payments and applying the payments to the loan. 12 U.S.C. §2605(i). Ms. Allen does not allege that BNY serviced the loan. In the Complaint, she instead identifies BNY as the alleged owner of the Note and Mortgage. In addition, the Requests for Information and the Notice of Error were directed to Ocwen, not to BNY.

Ocwen argues that its responses complied with RESPA and that the October 2017 Notice of Error was overly broad and duplicative of prior requests. The record does not appear to include complete copies (including exhibits) of the Requests for Information, the Notice of Error, or Ocwen's responses. Despite the apparent lack of complete documents, the record shows that

11

the exchanges involved substantial information. In the Notice of Error sent in October 2017, Ms. McDonnell acknowledged that she received over 517 pages of documentation in response to her prior requests for information. Although Ms. McDonnell asserted that the information was unreliable, she used the information to allege specific errors for the period through 2010, when Ms. Allen says she made her last payment. The Notice of Error sent in October 2017 was more than 30 pages without the attached exhibits, which also appear to be lengthy. It also contains information that appears to be irrelevant including three pages regarding unrelated lawsuits by the Division of Banks and the Attorney General. Although she is not a lawyer, Ms. McDonnell purported to provide a legal analysis of the ownership of the Note and the validity of the proof of claim filed by the servicer (that had already been disallowed), neither of which relate to servicing errors. The extent of the prior communications, the irrelevant and gratuitous information included in the October 2017 Notice of Error, and the timing of its issuance in relation to the commencement of this litigation are all factors that could suggest that the Notice of Error sent in October 2017 was overly broad and sent in bad faith or solely as a litigation tactic. *See O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 36-37 (D. Mass. 2014).

But the Court does not need to address such issues or the sufficiency of the responses. Ocwen is entitled to judgment as a matter of law on Count 2, since Ms. Allen failed to offer evidence supporting a claim for actual damages caused by the alleged breaches. To prevail on a claim under RESPA, the individual must show actual damages caused by the alleged violations. 12 U.S.C. § 2605(f); *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016); *In re Jackson*, 622 B.R. 321, 327 (Bankr. D. Mass. 2020). Expenses incurred in preparing a Qualified Written Request cannot constitute actual damages caused by the response, since they were incurred prior to the response. *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 782

(D.N.J. 2016). Attorneys' fees and costs for litigating allegations for RESPA violations do not constitute actual damages since they are separately authorized under the statute. 12 U.S.C. § 2605(f)(3); *see also Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1060 (7th Cir. 2018). Ms. Allen has provided no argument or evidence that her unspecified costs for counsel and for Ms. McDonnell could satisfy the actual damages requirement.

Although not in the Complaint, Ms. Allen also asserted that she suffered physically and mentally as a result of the actions of the Defendants. Relying on her discovery responses, in her Statement of Facts, Ms. Allen makes conclusory statements that she has suffered "for years" due to various alleged actions or inactions. But she failed to identify any specific separate damages for the alleged failure to respond to the Qualified Written Requests. To defeat the Motion, Ms. Allen must do more than assert conclusory statements about her emotional distress. She must show the causal link between such damages and the alleged failure to respond to the Qualified Written Requests, including the Notice of Error sent in October 2017, less than three months prior to filing this litigation. *Giordano*, 160 F. Supp. 3d at 785. She has failed to do so.

   c.  **Count 3 – Breach of Contract**

In Count 3, Ms. Allen asserts claims for breach of contract based on allegations that the Defendants (i) failed to honor an escrow waiver agreement, (ii) sent improper notices in 2014 through 2017, and (iii) assessed improper charges in 2014 through 2017. To defeat the Motion, Ms. Allen may not rely on the allegations in the Complaint but must provide evidence of such claims. Ms. Allen failed to submit any evidence regarding alleged breaches occurring in the period 2014 through 2017. Instead, Ms. Allen submitted the McDonnell Affidavit that focused on alleged improper charges and missed payments for the period through 2010. Ms. Allen concedes she has not made a payment since June 15, 2010.

The Defendants are entitled to judgment as a matter of law on Count 3 since the only evidence offered by Ms. Allen concerns alleged claims that are barred by the applicable statute of limitations. Under Massachusetts law, claims for breach of contract must be brought within six years. M.G.L. c. 260, § 2. The six-year period generally begins when the breach occurs. *Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc.*, 119 F.3d 55, 64 (1st Cir. 1997) (applying Massachusetts law). Since this adversary proceeding commenced on December 26, 2017, any alleged breach must have occurred after December 26, 2011.[1] The evidence offered by Ms. Allen relates almost exclusively to events no later than June 2010. Breaches of contract in that timeframe were more than six years before Ms. Allen commenced this adversary proceeding in 2017. Ms. Allen has offered only vague and unsupported allegations for alleged breaches after June 2010. Such vague allegations fail to meet her burden to demonstrate a genuine issue of material fact.

At the hearing, counsel for Ms. Allen argued that the statute of limitations was subject to tolling because of fraudulent concealment by the Defendants. Ms. Allen has not offered details as to the alleged fraudulent concealment that delayed discovery of facts. Her counsel's arguments are vague, unsupported, and undermined by the record. To support her tolling argument, Ms. Allen would need to at least show specifically what data was inaccessible, when it became available, and how she was prevented from acting sooner. Ms. Allen was represented by counsel during the First Bankruptcy from 2002 through 2008. She retained the law firm of Jamie Ranney, P.C., to represent her in connection with the mortgage loan from 2010 to at least 2016. Nothing

---

[1] Section 108 of the Code extends the statute of limitations for the trustee but does not apply to Chapter 13 debtors. 1 Bankruptcy Law Manual § 2:24 (5th ed.). Even if the Court were to find that Section 108 was applicable to Ms. Allen's claims, any alleged breach must have occurred prior to February 8, 2011, which is six years prior to the date the bankruptcy case was filed. As reflected above, Ms. Allen failed to offer evidence of any breach after June 2010.

in the record suggests that Ms. Allen was unable to timely pursue claims against the loan servicers for the alleged breaches, or for their alleged failures to respond adequately to prior notices and requests under RESPA. Given such circumstances, and Ms. Allen's vague and unsupported allegations, it is not reasonable to infer that the alleged breaches in 2002 to 2010 were inherently unknowable until 2017. Further, given that Ms. Allen confirmed a plan under Chapter 13 in the First Bankruptcy that dealt with the Mortgage and the claim of her loan servicer, she also is bound by the plan. She cannot revive disputes now about the balance due at that time. 11 U.S.C. §§ 1327(a), 1330(a).

### d. Count 4 – Chapter 93A Violations

In Count 4, Ms. Allen asserts that she is entitled to recover under Massachusetts General Laws Chapter 93A for alleged "unfair or deceptive acts" by the Defendants. M.G.L. c. 93A §§ 2, 9. Ms. Allen alleges that improper charges, misapplied payments, and establishment of the escrow account by the Defendants constitute "unfair and deceptive" acts under the statute. In the Complaint, Ms. Allen contends that the Defendants engaged in a fraudulent scheme by intentionally refusing to respond to her requests and creating false statements to extract payments from Ms. Allen.

The Defendants are entitled to judgment as a matter of law on Count 4 because Ms. Allen failed to offer evidence to support her arguments. In response to the Motion, Ms. Allen failed to offer any specific evidence that could demonstrate that the alleged actions rise to the level of being unfair or deceptive under the statute. Her labels, and accompanying unsupported speculations about Defendants' motives, are insufficient alone to prove her claims. Although the evidence reflects an ongoing dispute regarding the adequacy of the responses to her communications and disagreement about the application of payments, Ms. Allen offered no

15

evidence to support her allegations that the Defendants intentionally created false statements or refused to respond. A good faith dispute under a contract as to whether money or a performance is due does not rise to the level of a Chapter 93A claim. *Duclersaint v. Fed. Nat'l Mortg. Ass'n*, 427 Mass. 809, 814, 696 N.E.2d 536, 540 (1998).

In addition, under Chapter 93A, claims for damages must be asserted within four years. M.G.L. c. 260 § 5A. As with her breach of contract claims, the bulk of Ms. Allen's claims are based on specific actions no later than 2010, when Ms. Allen says she made her last payment. Since such claims arose prior to December 26, 2013, any action on such claims would be barred by the statute of limitations.

### e.    Count 5 – Obsolete Mortgage Act

In Count 5, Ms. Allen seeks a determination that the Mortgage is void by operation of law under the Obsolete Mortgage Act, M.G.L. c. 260 § 33. Ms. Allen alleges that since the Note was accelerated by letter dated May 27, 2010, the maturity date of the Mortgage was also accelerated from June 1, 2031, to May 27, 2010. Pursuant to the Obsolete Mortgage Act, Ms. Allen asserts that the Mortgage is unenforceable because the Defendants failed to take certain actions within five years of the alleged accelerated maturity date.

The Defendants are entitled to judgment as a matter of law since the acceleration of the Note did not advance the maturity date of the Mortgage for purposes of the Obsolete Mortgage Act. Courts have consistently rejected similar arguments, finding that the original maturity date of a mortgage applies despite an acceleration of the underlying note. As more fully explained in the cases, the purpose of the Obsolete Mortgage Act is to quiet title for old mortgages. *Nims v. Bank of New York Mellon*, 97 Mass. App. Ct. 123, 128, 142 N.E.3d 1124, 1129, *review denied*, 485 Mass. 1105, 150 N.E.3d 1121 (2020). Under the Obsolete Mortgage Act, mortgages

16

are deemed obsolete 35 years after the mortgage is recorded or five years from the maturity date unless certain actions are taken. M.G.L. c. 260 § 33. Nothing in the Obsolete Mortgage Act addresses the liability on any underlying note or the rights and remedies with respect to that note. Nor does the alleged acceleration of the Mortgage change the analysis. Nothing in the statute or its history "suggests that the statute is designed to shorten the period during which a mortgage is enforceable." *Nims*, 97 Mass. App. Ct. at 128, 142 N.E.3d at 1128. Neither the statute nor the case law supports Ms. Allen's contention. *See Hayden v. HSBC Bank USA, Nat'l Ass'n*, 956 F.3d 69, 71 (1st Cir. 2020).

### 6. Conclusion

For the foregoing reasons, the Court finds that there is no genuine dispute of material fact and that the Defendants are entitled to judgment as a matter of law on all counts. The Court will grant the Motion and enter judgment in favor of the Defendants by separate order.

By the Court,

Dated: September 28, 2022

Janet E. Bostwick
United States Bankruptcy Judge

17